UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN WILER, | ) | Case No. 5:20-cv-490 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| KENT STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Kathleen Wiler, a former coach of women's field hockey at Kent State University, alleges that the university paid her less than her male counterparts. Also, she claims that Kent State constructively discharged her following her complaints about the unequal treatment she alleges, retaliated against her, and otherwise engaged in unlawful sex discrimination. Defendant Kent State University moves to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6), which for reasons discussed below, the Court construes as a motion for judgment on the pleadings under Rule 12(c). (ECF No. 13.) For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Kent State's motion.

### STATEMENT OF FACTS

On Defendant's motion for judgment on the pleadings, the Court takes the following allegations in the amended complaint as true and construes them in Plaintiff's favor.

1

### A. Ms. Wiler's Tenure as Women's Field Hockey Coach at Kent State University

Kathleen Wiler coached women's field hockey at Kent State University from 2006 until February 2019, when she resigned. (ECF No. 35-1, ¶¶ 15, 32, PageID #367, 369.) During her time at the helm of Kent State's NCAA Division I women's field hockey program, the team dominated the Mid-America Conference, also known as the MAC: it won eight regular season titles, five conference tournament titles, and made five NCAA post-season appearances. (*Id.*, ¶ 17, PageID #367.) For her team's successes, Ms. Wiler earned recognition five times as MAC Coach of the Year. (*Id.*, ¶ 18.) Like other head coaches at Kent State, Ms. Wiler had many broad responsibilities, including teaching, training, counseling, and advising her players, fundraising for and managing the program and its budget, public relations, and recruiting. (*Id.*, ¶ 26.) For all this, Ms. Wiler says she was paid "approximately $85,496.00." (*Id.*, ¶ 21.)

Compared to male coaches at Kent State, Plaintiff alleges she received "unequal pay" and had "more difficult conditions," "higher expectations," "more work," and "more responsibility" but with "less resources and less support," notwithstanding Kent State's non-discrimination policies. (*Id.*, ¶¶ 29–31, PageID #369.) Ms. Wiler reported these perceived disparities. (*Id.*, ¶ 32.) Although Kent State has a policy to investigate incidents of discrimination "that are reported in an appropriate and timely manner," it allegedly "refused to investigate or remedy" Wiler's claim. (*Id.*, ¶¶ 33–34.)

2

On August 31, 2017, Ms. Wiler filed a charge against Kent State with the Equal Employment Opportunity Commission. (*Id.*, ¶¶ 32, 79.) Little changed, and Kent State allegedly failed to investigate or remedy her complaints. (*Id.*, ¶¶ 32–35.) On February 26, 2019, Wiler supplemented her complaint with the EEOC. (*Id.*, ¶ 79.) Two days later, she resigned. (*Id.*, ¶ 34.) In December 2019, Plaintiff filed a second complaint with the EEOC. (*Id.*, ¶ 35.)

## B.  Plaintiff Sues Kent State

On March 3, 2020, Wiler filed this lawsuit against Kent State for wage discrimination, sex discrimination, and retaliation under corresponding provisions of Title VII, Title IX, and the Equal Pay Act. (*See* ECF No. 1.) In the operative pleading, the amended complaint filed on February 2, 2021 (ECF No. 35-1), Plaintiff alleges she "was paid the lowest of any . . . coaches, most of whom were male[,]" because of pervasive "gender stereotypes" that negatively affected her "pay at the time of hire, during consideration of raises/contract extensions and in the evaluation of work performed and success obtained, relative to her male peers." (*Id.*, ¶¶ 51–52, PageID #373.)

To buttress her allegations, Plaintiff points to several other coaches at Kent State who she says were equally (if not less) successful, but paid more. First, she identifies several others at Kent State who were MAC Coaches of the Year: Jeff Duncan (baseball), Herb Page (golf), Roberto Marinaro (women's soccer), and Eric Oakley (softball). (*Id.*, ¶ 70, PageID #376–77.) She alleges their average compensation was $145,423. (*Id.*, ¶ 70, PageID #377.) Among coaches whose teams won MAC regular season championships, coaches Oakley, Duncan, Page, Greg

3

Robertson (women's golf), and Brice Biggin (gymnastics), their compensation averaged $136,028 per year. (*Id.*, ¶ 71, PageID #377.) Marinaro, the one other coach to win a MAC Tournament championship, was paid $95,554. (*Id.*, ¶ 73.) As for male coaches whose teams made it to the NCAA tournament—Page, Robertson, and Biggin—their average pay was $128,777. (*Id.*, ¶ 73.) Plaintiff excludes football and cross-country from her comparisons. (*Id.*, ¶ 70(b) & n.4.) According to the amended complaint, Ms. Wiler "was in the top two of successes, but was the only female coach, sixth in seniority, and 12th in pay out of fourteen total coaches" and that her average pay "has always been lower and substantially lower than the average of the males" with "similar or far less success" than her. (*Id.*, ¶ 74, PageID #377–78.)

Since 2006, Plaintiff claims "there have been 26 head coaches in the various sports KSU offers, but only five have been women," and "there are no women coaching men and only two sports are currently coached by women." (*Id.*, ¶¶ 91–92, PageID #381.) All this, she claims, amounts to illegal wage discrimination on the part of Kent State. Because of these persistent disparities, Plaintiff alleges she was discriminated and retaliated against, and eventually constructively discharged.

## STATEMENT OF THE CASE

Based on these allegations, Plaintiff asserts three claims for: (1) wage discrimination and retaliation in violation of Title VII (Count I); (2) violation of the Equal Pay Act (Count II); and violations of Title IX (Count III). (ECF No. 35-1; ¶¶ 101–30; PageID #383–87.) Each count also appears to claim wrongful discharge. (*Id.*, ¶¶ 105–06; 116–17; 126–27, PageID #384–86.) In addition to damages for economic and non-economic losses, including back pay and front pay, Plaintiff seeks

4

equitable relief to enjoin gender bias and stereotyping in making pay decisions, plus mandating various training and other remedial measures at Kent State. (*Id.*, PageID #387.)

## THRESHOLD PROCEDURAL ISSUES

Before turning to the merits of Kent State's motion, there are two threshold procedural issues to address: (1) Plaintiff's EEOC charges; and (2) the posture of Kent State's motion.

### I.     EEOC Charges

In her initial complaint, Plaintiff alleged she received a right-to-sue letter from the EEOC on her first complaint filed in August 2017. (ECF No. 1, ¶ 110, PageID #21.) Plaintiff averred she requested, but had not received, a right-to-sue letter for her second complaint to the EEOC made in December 2019. (*Id.*) In her amended complaint, Plaintiff alleges that she received a right-to-sue letter, though the pleading does not specifically say whether it applies to both claims or if she is merely referencing the first letter. (ECF No. 35-1, ¶ 9, PageID #366.) Neither party raises the issue in their briefing, but the Court briefly pauses to consider whether Plaintiff has properly exhausted her claims.

Before filing suit under Title VII, a plaintiff must bring claims to the EEOC to provide the agency an opportunity to investigate and decide if it wants to pursue charges on behalf of the federal government. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455–56 (6th Cir. 1999). "[F]or 180 days after the filing of a charge, the EEOC retains 'exclusive' jurisdiction over the subject matter of that charge[,]" a period of time that is "crucial to the statutory scheme." *Id.* at 456 (quoting *EEOC v.*

5

*Hearst Corp.*, 103 F.3d 462, 466 (5th Cir. 1997)). In contrast, Title IX "has no administrative exhaustion requirement and no notice provisions. Under its implied private right of action, plaintiffs can file directly in court and obtain the full range of remedies." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009).

The Sixth Circuit holds that the lack of a right to sue letter does not deprive a district court of jurisdiction, but instead constitutes a condition precedent to filing suit that is curable (by receiving a right-to-sue letter) or waivable (by the parties or the Court). *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (noting it would be "unduly harsh . . . to deny Plaintiff his day in court as to his ADA claim" based on not having a right to sue letter at the time he filed the complaint); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) (holding a right to sue letter is a condition precedent, not a jurisdictional requirement).

Notwithstanding this administrative regime, the court in *Parry* noted that waiving the condition precedent was appropriate in the absence of evidence of prejudice and, in any event, the plaintiff cured the issue by obtaining a right-to-sue letter. *Parry*, 236 F.3d at 309. District courts retain discretion, however, to dismiss claims or actions without prejudice where a plaintiff fails to obtain a right-to-sue letter before filing. *See Mitchell v. Chapman*, 343 F.3d 811, 820 n.10 (6th Cir. 2003); *accord Jones v. Toledo Pub. Schs.*, No. 3:14CV911, 2016 WL 1047247, at \*3 (N.D. Ohio Mar. 16, 2016) (declining to dismiss Title VII claims); *Lott v. Kmart*, No. 2:13-cv-228, 2013 WL 3927617, at \*2 (S.D. Ohio July 29, 2013) (dismissing without prejudice).

Here, the record does not confirm that Plaintiff exhausted administrative review of her allegations before bringing her Title VII claims. Neither party makes much of this issue in briefing. For that reason, and because Kent State makes no argument of prejudice, the Court deems the issue whether Plaintiff had a right-to-sue letter when she filed her initial complaint waived.

## II. Kent State's Motion to Dismiss Under Rule 12(b)(6)

Plaintiff argues that Kent State forfeited its ability to bring a Rule 12(b)(6) motion by first filing an answer to her initial complaint. (ECF No. 19, PageID #168.) Plaintiff has a point, but not much of one. Rule 12 allows for asserting several different defenses by motion, each of which must be made "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). At times, this can become complicated. For example, Rule 12(h)(1) provides that a party waives certain defenses by failing to assert them in a responsive pleading. Failure to state a claim under Rule 12(b)(6) is *not* one of those defenses. After an answer, this defense may "be raised: in any pleading allowed or ordered under Rule 7(a); by a motion under Rule 12(c); or at trial." Fed. R. Civ. P. 12(h)(2)(A)–(C).

In its answer, Kent State asserted the defense that Plaintiff had failed to state a claim. (ECF No. 12, PageID #81.) When raised following an answer, the defense "may be considered by the court, even when interposed after the responsive pleading has been filed, although technically [it is] no longer [a] Rule 12(b) motion." Wright & Miller, *Federal Practice and Procedure* § 1361 (3d ed. 2002). In other words, Kent State preserved the defense by asserting it in its answer, even though it waived consideration of the defense by motion under Rule 12(b)(6) by first answering.

7

Contrary to Plaintiff's claim, however, the Court may not simply disregard the motion.

At the time the case and motion were filed, the governing standing order required the filing of an answer notwithstanding any motion under Rule 12(b). (*See* [ECF No. 20](#), PageID #189 (citing [ECF No. 25](#), PageID #218) ("This Court requires defendants to file an answer to the complaint regardless of whether they have filed or plan to file a motion to dismiss.")) Plaintiff attempts to turn this procedural formality into a substantive bar to consideration of Kent State's Rule 12(b)(6) motion. But at least two features of the Civil Rules preclude this effort, as does basic fairness. First, Rule 12(h) specifically preserves the defense. Second, a motion for judgment on the pleadings under Rule 12(c) constitutes a belated motion under Rule 12(b)(6), subject to review under the same legal standard. *See, e.g., McMillan v. Collection Pros., Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006).

Moreover, district courts within the Sixth Circuit appear to permit post-answer Rule 12(b)(6) motions, despite other district courts construing them as Rule 12(c) motions. *Ortiz v. Holmes*, 157 F. Supp. 3d 692, 695 (N.D. Ohio 2016) (citing *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015) (observing that district courts within the Sixth Circuit permit post-answer Rule 12(b)(6) motions, and that there is practice outside the Sixth Circuit of construing premature 12(c) motions as Rule 12(b)(6) motions)). Accordingly, the Court declines to allow the procedural technicalities stand in the way of considering Kent State's motion.

## ANALYSIS

Whether the Court considers Kent State's motion under Rule 12(b)(6) or construes it as a motion for judgment on the pleadings under Rule 12(c), the same standard applies. *See Tucker v. Middleburg-Legacy Place*, LLC, 539 F.3d 545, 549 (6th Cir. 2008). At this stage of the pleadings, a plaintiff must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); Fed. R. Civ. P. 8(a)(2). But that short and plain statement must offer more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rather, there must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quotation omitted).

In assessing the plausibility of Plaintiff's claims, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the facts pled as true, and draws all reasonable inferences in the plaintiff's favor. *Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018); *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But the Court does not accept "[c]onclusory allegations or legal conclusion masquerading as factual allegations"; those "will not suffice." *Bullington*, 905 F.3d at 469 (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Against the backdrop of this familiar legal standard, the

Court turns to the allegations of Plaintiff's complaint and Defendant's arguments for its dismissal.

## I. Wage Discrimination

Both Title VII and the Equal Pay Act seek to remedy pay disparities. Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The Equal Pay Act prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [it] pays wages to employees of the opposite sex . . . for equal work" for jobs that require "equal skill, effort, and responsibility, and which are performed under similar working conditions" subject to a number of exceptions. 29 U.S.C. § 206(d).

Title VII sweeps more broadly than the Equal Pay Act. The former prohibits unequal pay based on a host of factors; the latter only precludes inequality in pay based on sex. When it comes to claims for unequal pay based on sex alone, the analysis under each statute differs. A recent ruling on summary judgment explains if, when, and how the differences between the two laws matter. *Rogers v. Bridges Rehab. Servs., LLC*, No. 1:18-cv-728, 2019 WL 5731016, at *4–5 (N.D. Ohio Nov. 5, 2019) (discussing the different burdens of production each law requires). But on a motion to dismiss, these distinctions do not matter yet, and Title VII and the Equal Pay Act are assessed together. *See, e.g.*, *Bridgeman v. City of Bedford Heights*, No. 1:18-cv-2481, 2019 WL 1469381, at *4 (N.D. Ohio Apr. 3, 2019) (noting at the motion

10

to dismiss stage "the analysis of an unequal pay claim is essentially the same under both the Equal Pay Act and Title VII") (collecting cases).

### I.B.1. Plaintiff's Allegations of Wage Discrimination

To state a claim for wage discrimination under the Equal Pay Act, Plaintiff must allege sufficient facts to infer that "the defendant employer paid employees of one sex less than employees of the opposite sex 'for equal work on jobs . . . which require equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .'" *Conti v. United Enters., Inc.*, 50 F. App'x 690, 696 (6th Cir. 2002) (quoting 29 U.S.C. § 206(d)(1)). Ultimately, resolving "a claim under the Equal Pay Act depends not on job titles or classifications, but on actual job requirements and performance." *Id.* (citing 29 C.F.R. § 1620.13(e)). Even at summary judgment, "[p]recise equivalence is not required. Rather, there need be 'only substantial equality of skill, effort, responsibility, and working conditions.'" *Id.* (quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)).

Reading the amended complaint in Plaintiff's favor, Ms. Wiler alleges that coaches at Kent State are responsible for a host of similar responsibilities, which each does for his or her own particular sport. ([ECF No. 35-1](), ¶ 25, PageID #368.) Further, she claims that her role as the women's field hockey head coach was "substantially equal" to other coaching positions held by men. (*Id.*, ¶ 23.) And she also states the different coaching positions require similar "skill, effort, and responsibility." (*Id.*, ¶ 24.) Like other coaches, Ms. Wiler asserts that she had responsibility for teaching, training, counseling, advising, program and budget management, fundraising, public relations, and recruiting. (*Id.*, ¶ 26.) Assuming, as the Court must at the pleading

11

stage, that at least one male coach she identifies (*see id.*, ¶¶ 70–73, PageID #376–77) engaged in substantially similar work as Ms. Wiler, at least one of them could plausibly have done substantially similar work, but received more compensation for it.

At this stage, Plaintiff need not prove her claim. Eventually, the male coaches Plaintiff identifies for comparison will be "scrutinized closely." *Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 799-800 (S.D. Ohio 1998) (discussing the requirements for "determining whether men's and women's coaching positions are equal" and that "courts . . . have been reluctant to find an equality of work between coaches of different sports"), *aff'd*, 194 F.3d 1315 (6th Cir. 1999). For now, Plaintiff alleges facts consistent with the Rule 8 standard that male comparator coaches exist and do similar work, yet were paid more than her. At this stage, drawing all reasonable inferences in her favor, these allegations make the Equal Pay Act claim plausible.

### I.B.2. Allegations at the Pleading Stage

The cases Kent State cites in support of its argument do not change this outcome. For example, Kent State cites *Carey v. Foley & Lardner* LLP, 577 F. App'x 573, 579–80 (6th Cir. 2014), for the proposition that Plaintiff's complaint does not state a claim because she "failed to plead *facts* showing that the work she performed" as head coach was "substantially equal to one or more male comparators." (ECF No. 13-1, PageID #104 (cleaned up).) But *Carey* specifically determined the plaintiff could not sustain an Equal Pay Claim because he could not meet "his burden to introduce evidence that a female colleague was paid at a higher rate than he was

despite" their similar qualifications, skills, and responsibilities at summary judgment. *Carey*, 577 F. App'x at 580.

Perhaps Plaintiff's claims will meet a similar fate when they require evidence, but Ms. Wiler has discharged her pleading obligations. "[W]hen measured against the elements of" a claim for wage discrimination, her complaint is plausible. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). Therefore, the Court concludes that Plaintiff states a claim for relief under the Equal Pay Act. Because at this stage, the analysis under Title VII tracks that under the Equal Pay Act, the Court also denies Defendant's motion with respect to Plaintiff's claim under Title VII to the extent it alleges wage discrimination.

## II.  Retaliation and Title IX Discrimination

In Count I of her amended complaint, Plaintiff alleges Kent State retaliated against her in violation of Title VII by "refusing to repair the pay discrimination." (ECF No. 35-1, ¶ 104, PageID #383.) In Count III of her amended complaint, Plaintiff alleges that Kent State violated Title IX by discriminating and retaliating against her. (*Id.*, ¶¶ 120–30, PageID #385–86.) Elsewhere, the amended complaint makes general allegations of sex discrimination in Kent State's employment decisions and Ms. Wiler's working conditions. (*See, e.g., id.*, ¶¶ 42, 47 & 125, PageID #170, 372 & 386.) In opposing the motion to dismiss, Plaintiff further suggests claims of discrimination beyond unequal pay, arguing that she "plausibly pleaded sufficient facts that *she was treated worse* and paid less than male coaches for doing substantially similar work." (ECF No. 19, PageID #170 (emphasis added).)

13

Taken together, and construed in her favor, the amended complaint advances three other claims: (1) discrimination in violation of Title IX; (2) retaliation in violation of Title IX; and (3) retaliation in violation of Title VII.

### II.A. Title IX Discrimination

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," with several exceptions not relevant here. 20 U.S.C. § 1681(a). The statute "prohibits both sex discrimination and retaliation against an individual who complains about sex-based discrimination perpetrated by an educational institution receiving federal funds." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005). Title IX's enforcement mechanism provides for termination of federal funding. *See* 20 U.S.C.§ 1682; 34 C.F.R. § 106.71. In this way, Title IX fits into a larger federal statutory framework designed to prevent unlawful discrimination. *Compare* 20 U.S.C. § 1681 *et seq.* (Title IX) *with* 42 U.S.C. § 2000e *et seq.* (Title VII) *and* 29 U.S.C. § 206(d) (Equal Pay Act). But Title IX "neither expressly nor implicitly excludes employees from its reach[.]" *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520–21 (1982).

Title VII specifically makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire

14

spectrum of disparate treatment of men and women in employment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). Notwithstanding the cause of action Title VII provides for sex discrimination in the terms and conditions of employment and retaliation, the question arises: does Plaintiff have a private right of action under Title IX for these same causes of action?

### II.A.1. Circuit Split

The Supreme Court has not directly spoken to the issue whether Title VII preempts Title IX where an employee brings a discrimination or retaliation case against employers subject to Title IX, and the Circuits are split on it. The First, Third, and Fourth Circuits permit claims to proceed under both statutes. *See Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 563–64 (3d Cir. 2017); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988). The Fifth and Seventh Circuits disagree. *See Waid v. Merrill Area Pub. Sch.*, 91 F. 3d 857, 861–62 (7th Cir. 1996), *rev'd in part on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009); *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995).

In this Circuit, the law remains unsettled. In an unpublished decision, released at a time when such decisions received no precedential weight, the Sixth Circuit affirmed summary judgment in Kent State's favor because the plaintiff could not make out prima facie elements of either a Title IX or Title VII claim. *Ivan v. Kent State Univ.*, No. 94-4090, 1996 WL 422496, at *2–3 (6th Cir. July 26, 1996) (per curiam). There, the court determined that a student who had some clinical and

teaching duties that made her like an employee had a private right of action for discrimination under Title IX. *Id.* at *2, 6. In a footnote, the *Ivan* Court overruled the decision of a district court in another case, *Wedding v. University of Toledo*, 862 F. Supp. 201, 202–04 (N.D. Ohio 1994). In *Wedding*, the district court held that, although "both [Title VII and Title IX] prohibit discrimination based on sex[,]" Title VII provides the "comprehensive scheme" for adjudicating claims against a Title IX covered employer, not Title IX. *Id.* In *Ivan,* the Sixth Circuit "overrule[d] th[is] conclusion reached by the district court in *Wedding*." 1996 WL 422496, at *2 n.10. Notwithstanding questions of *Ivan*'s precedential value, other courts have followed *Ivan* as expressing the view of the Sixth Circuit.

Since then, at least one judge on the Sixth Circuit expressed a contrary view on the issue. *See Arceneaux v. Vanderbilt Univ.*, 25 F. App'x 345, 349 (6th Cir. 2001) (Batchelder, J., concurring). Specifically, Judge Batchelder authored a separate concurrence "only to say that I agree with the well-reasoned opinion of the Fifth Circuit in *Lakowski* . . . that Congress did not intend for Title IX to provide the route for an end-run around Title VII for individuals claiming employment discrimination on the basis of gender."

### II.A.2. Analysis

Although the Court is inclined to agree with the view of Judge Batchelder concurring in *Arceneaux* and of the district court in *Wedding*, the Court need not wade into this split of authority because Plaintiff fails to state a plausible claim for discrimination based on facts *separate from* wage discrimination. Each allegation Plaintiff makes that might suggest a claim of discrimination other than pay returns

16

to the allegation that Kent State paid Ms. Wiler less than her male counterparts. As but one example, the amended complaint alleges that Kent State required Ms. Wiler "to put in more effort than male head coaches in teaching/training and the counseling/advising of her student athletes for reasons related to gender stereotypes . . . ." (ECF No. 35-1, ¶ 27, PageID #368.) But this sentence continues, "yet paid her less." (*Id.*)

To the extent Plaintiff attempts to state a claim under Title IX for workplace discrimination (other than for unequal pay), she fails to do so. In particular, Plaintiff fails to allege an "adequate factual basis" for her discrimination claims separate from the wage issue. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). Allegations that Kent State "refused to repair ongoing discrimination" and took "an adverse employment action" against her amount to nothing more conclusory allegations of buzzwords. ([ECF No. 35-1](), ¶¶ 122–27, PageID #386.) Beyond the wage discrimination claim, no facts pled in the amended complaint indicate or imply that Ms. Wiler suffered discrimination "because of" (Title VII) or "on the basis of" (Title IX) her sex. Therefore, if Plaintiff attempts to assert discrimination claims beyond those involving alleged unequal pay, the Court dismisses them.

### II.B. Retaliation

Plaintiff also asserts claims for retaliation under Title VII (Count I) and Title IX (Count III). To state a retaliation claim, whether under Title VII, Title IX, or the Equal Pay Act, Plaintiff must allege that (1) she engaged in protected activity; (2) of which Kent State knew; (3) as a result of which, Kent State took an adverse employment action against her; and (4) that there was a causal connection between

the protected activity and Kent State's adverse employment action. *See Denman v. Youngstown St. Univ.*, 545 F. Supp. 2d 671, 678 (N.D. Ohio 2008) (collecting cases). While she need not prove the prima facie elements at this stage of the proceedings, Plaintiff must allege facts that make these elements plausible.

Under either statute, the amended complaint fails to state a claim in anything other than the most conclusory terms. Even assuming Plaintiff makes plausible allegations regarding the first two elements of her prima facie case, she fails to identify any retaliatory action (other than her alleged constructive discharge, discussed below) that Kent State took against her after she made her complaints or filed either EEOC charge. (*See* ECF No 35-1, ¶¶ 32–35, PageID #369.) Plaintiff argues that Kent State failed to investigate or remedy her complaint. But she does not allege Kent State failed to do so in retaliation for her complaints, and the amended complaint states no facts that would allow such an inference. To the contrary, taken with her other allegations, any failure to investigate or take Ms. Wiler's complaints seriously was more systemic and not borne of retaliation. On a motion to dismiss, the Court does not accept mere labels or conclusory allegations. Therefore, the Court determines that the amended complaint fails to state a claim for retaliation on any theory.

### III. Constructive Discharge

Plaintiff asserts a claim for constructive discharge under Title VII (ECF No. 35-1, ¶¶ 120–29, PageID #385–86) and Title IX (*id.*, ¶ 126, PageID #386). The Sixth Circuit sets a high bar for constructive discharge. "A constructive discharge occurs when 'working conditions would have been so difficult or unpleasant that a

reasonable person in the employee's shoes would have felt compelled to resign.'" *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008)) (analyzing constructive discharge under the ADA).

A constructive discharge claim requires pleading and proving that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit. *See Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Whether a reasonable person would feel compelled to resign depends on the facts and circumstances of the particular case, including whether the employee suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000)). Facts relating to these considerations, singly or in combination, may support a claim. *Id.*

But Plaintiff does not allege she experienced any of these events. In total, the amended complaint asserts that Kent State "refused to remedy Wiler's complaints and Wiler was forced to resign her position based on the failure of [Kent State] to remedy her pay equity concerns and the continuing acts of pay discrimination." (ECF No. 35-1, ¶ 34, PageID #370.) While the amended complaint states a claim for

unequal pay, nothing about that pleading suggests she suffered from working conditions that were so intolerable that she had no choice but to quit. But constructive discharge requires more than an underlying statutory violation. *See Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998). The amended complaint does not have more. For these reasons, the Court determines that the amended complaint fails to state a claim for constructive discharge.

## CONCLUSION

For all the foregoing reasons, the Court construed Kent State's motion to dismiss as a motion for judgment on the pleadings, which it **GRANTS IN PART**. Specifically, the Court **GRANTS** the motion as it relates to the Title VII constructive discharge/retaliation claim (Count I) and the Title IX (or Title VII) discrimination, retaliation, and constructive discharge claims (Count III) and **DISMISSES** those claims **WITH PREJUDICE**.

But the Court **DENIES IN PART** Kent State's motion as to the wage discrimination claim asserted under Title VII (Count I) and the Equal Pay Act (Count II).

**SO ORDERED.**

Dated: March 3, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio