# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KATHLEEN WILER, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 5:20-cv-00490 |
| | ) |
| v. | ) |
| | ) JUDGE J. PHILIP CALABRESE |
| KENT STATE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT KENT STATE UNIVERSITY**

**TABLE OF CONTENTS**

**REPLY ARGUMENT** ....................................................................................................................1

    **I.**     **Wiler Has Failed to State a Prima Facie Case Under Title VII or the EPA** ..........1

        **A.**     **Coach Oakley is Not an Appropriate Comparator** ........................................1

        **B.**     **Coach Marinaro is Not an Appropriate Comparator** ..................................3

        **C.**     **Coach Andrassy is Not an Appropriate Comparator** ..................................4

    **II.**     **Wiler Has Failed to Rebut the Legitimate, Non-Discriminatory Reasons Offered by the University to Justify the Complained-Of Pay Disparities** ...........................5

        **A.**     **Wiler Does Not Dispute Kent State's Reliance on the Market Rate for Head Coach Salaries for Each Individual Sport in the MAC** ......................5

        **B.**     **Wiler Does Not Dispute that Coach Marinaro's and Coach Andrassy's Seniority is a Legitimate, Non-Discriminatory Basis for a Pay Differential** ...............................................................................................................8

        **C.**     **With Respect to Bonus and Supplemental Compensation, Wiler Does Not Dispute that Such Compensation is Determined by Objective Factors Tied to Quality or Quantity of Production** ................................................10

**CONCLUSION** ............................................................................................................................10

i

## TABLE OF AUTHORITIES

**COURT RULES**

Fed. R. Civ. P. 56(c)(4)..................................................................................................1

**JUDICIAL OPINIONS**

*Bartges v. Univ. of N. Carolina at Charlotte*,
   908 F.Supp. 1312 (W.D.N.C.1995) .........................................................................7

*Beck-Wilson v. Principi*,
   441 F.3d 353 (6th Cir.2006) ....................................................................................3

*Bence v. Detroit Health Corp.*,
   712 F.2d 1024 (6th Cir.1983) ..................................................................................1

*Carey v. Foley & Lardner LLP*,
   577 Fed.Appx. 573 (6th Cir.2014)...........................................................................4

*Chapman v. AI Transport*,
   229 F.3d 1012 (11th Cir.2000) ................................................................................8

*Coles v. Johnny Appleseed Broadcasting Co.*,
   479 F.Supp.3d 585 (N.D.Ohio 2020).......................................................................8

*Dawe v. Corr. USA*,
   E.D. Cal. No. CIV. S–07–1790, 2010 WL 682321 (Feb. 24, 2010).........................1

*E.E.O.C. v. Health Mgt. Group*,
   N.D.Ohio No. 5:09-CV-1762, 2011 WL 4376155 (Sept. 20, 2011)....................1, 2

*Gagliardi v. Sacred Heart Univ., Inc.*,
   D. Conn. No. No. 3:17-cv-857, 2019 WL 3202742 (July 16, 2019) .......................4

*Gehrt v. Univ. of Illinois at Urbana-Champaign Co-op. Extension Serv.*,
   974 F.Supp. 1178 (C.D.Ill.1997) .............................................................................3

*Grover v. Smarte Carte, Inc.*,
   836 F.Supp.2d 860 (D. Minn.2011).........................................................................2

*Harker v. Utica College of Syracuse Univ.*,
   885 F.Supp. 378 (N.D.N.Y.1995) ..................................................................................9

*Internatl. Union, United Auto., Aerospace & Agr. Implement Workers of America v. State of Mich.*,
   886 F.2d 766 (6th Cir.1989) ..........................................................................................5

*Jones v. Trane US, Inc.*,
   M.D. Tenn. No. 3:19-0453 2020 WL 5088211 (Aug. 28, 2020) .................................3

*Lewis v. Smith*,
   255 F.Supp.2d 1054 (D. Ariz. 2003) .............................................................................6

*Marlow v. Am.'s Collectible Network, Inc.*,
   E.D. Tenn. No. 3:08–CV–249, 2010 WL 3064262 (Aug. 3, 2010) ..............................3

*McEwen v. MGM Grand Detroit*,
   E.D. Mich. No. 03-73039, 2006 WL 83476 (Jan. 12, 2006) ........................................2

*Price v. Lockheed Space Operations Co.*,
   856 F.2d 1503 (11th Cir.1988) ......................................................................................6

*Stanley v. Univ. of Southern California*,
   178 F.3d 1069 (9th Cir.1999) .......................................................................................9

*Weaver v. Ohio State Univ.*,
   71 F.Supp.2d 789 (S.D.Ohio 1998) .....................................................................5, 6, 7

*Wheatley v. Wicomico Cnty.*,
   390 F.3d 328 (4th Cir.2004) .........................................................................................4

*Zmyslo v. NCR Corp.*,
   S.D.Ohio No. C-3-89-501, 1992 WL 1258521 (May 20, 1992) ..................................8

## REPLY ARGUMENT

I.  **Wiler Has Failed to State a Prima Facie Case Under Title VII or the EPA.**

Wiler's Brief in Opposition confirms that she is attempting to state a prima facie case under Title VII and the EPA with respect to only three of her male colleagues: Eric Oakley (Softball), Rob Marinaro (Women's Soccer), and Jim Andrassy (Wrestling). None of these coaches are appropriate comparators for purposes of Wiler's Title VII and EPA claims.

### A.  Coach Oakley is Not an Appropriate Comparator.

Coach Oakley is not an appropriate comparator because, as Wiler conceded during her deposition, he was at all times paid a *lower* salary than she was. *See* Wiler Dep. (Doc #: 50, PageID #: 871-73). Notwithstanding this admission, Wiler's Brief in Opposition attempts to salvage Coach Oakely as a comparator by claiming that his total compensation was higher when performance incentive bonuses and supplemental camp income are considered.[1]

To the extent Wiler's argument is supported by any admissible evidence,[2] it is unavailing. To begin with, courts in this jurisdiction have held that "to properly compare the pay rates […] the Court must measure the amount of pay ***against a common denominator***." *E.E.O.C. v. Health Mgt. Group*, N.D.Ohio No. 5:09-CV-1762, 2011 WL 4376155, *3 (Sept. 20, 2011) (citing *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027 (6th Cir.1983)) (emphasis added). In

---

[1] Wiler does not identify any other specific categories of compensation (beyond performance incentive bonuses and supplemental camp income) that would evidence a pay disparity between her and Coach Oakley. While Wiler's Brief in Opposition makes a cursory reference to vehicle stipends, *see* Br. in Opp. (Doc #: 87, PageID #: 2379), she does not argue that Coach Oakley's vehicle stipend was more generous than her own. In fact, both coaches' contracts are identical when it comes to vehicle stipends. *Compare* Wiler 2016 Contract (Doc #: 52-7, PageID #: 1178) *with* Oakley 2016 Contract (Doc #: 52-51, PageID #: 1750).

[2] In support of her argument, Wiler attaches *Coach Oakley's* pay stubs as exhibits to *her own* Declaration. Wiler does not claim to have personal knowledge sufficient to authenticate Coach Oakley's (or any other coach's) pay stubs, and on that basis alone Wiler's Declaration runs afoul of Fed. R. Civ. P. 56(c)(4). *See, e.g.*, *Dawe v. Corr. USA*, E.D. Cal. No. CIV. S–07–1790, 2010 WL 682321, *1 (Feb. 24, 2010) ("defendants attached numerous documents produced in discovery as exhibits 'authenticated' by defendants' counsel. Such authentication is clearly improper because defendant's counsel has failed to demonstrate any personal knowledge as to the authenticity of these documents, and therefore the court has not considered them in this motion.").

most cases, "base salary and commission rate are the proper figures to compare, not the total amount of compensation." *Id.*; *see also Grover v. Smarte Carte, Inc.*, 836 F.Supp.2d 860, 865 (D. Minn.2011) (analyzing plaintiff's and her comparators' "guaranteed pay" for purposes of evaluating plaintiff's prima facie case). That approach makes sense here, insofar as Wiler admits that a coach's supplemental camp income is not predetermined or set by the University, but a function of how many camps a coach decides to hold, how many students attend each camp, and the University's overhead for hosting the camp(s). Wiler Dep. (Doc #: 50, PageID #: 888-95).

Moreover, Wiler has admitted that she earned less in camp income because she voluntarily chose to distribute "most of" this income to her assistant coaches. Wiler Dec. (Doc #: 56, PageID #: 1928-29). Wiler does not allege – and there is nothing in the record to suggest – that the University required Wiler to do so. Having made the personal decision to share her camp income with others – and thereby decrease her own personal earnings – Wiler cannot claim that *the University* paid her less than Coach Oakley. ***Critically, and had Wiler not distributed her camp income to others, she has not argued that she would have earned less total compensation than Coach Oakley.*** This failure of proof is fatal to Wiler's prima facie case. *See McEwen v. MGM Grand Detroit*, E.D. Mich. No. 03-73039, 2006 WL 83476, *7 (Jan. 12, 2006) ("Plaintiff has not cited any authority for the proposition that a wage discrimination plaintiff can establish a prima facie case without showing that he was paid less than the allegedly comparable employee at all times.").

With respect to performance incentive bonuses, the uncontroverted data presented in AD Nielsen's Declaration establishes that Wiler earned *just as much as* or *more than* Coach Oakley during the entirety of the period at issue in this case. *See* Nielsen Dec. (Doc #: 52, PageID #: 1143). Accordingly, and because Coach Oakley was always paid a *lower* base salary and earned just as much *or less* than Coach Wiler in performance incentive bonuses, he cannot be held out

2

as a higher-paid male comparator. Wiler's attempt to do so by pointing to Coach Oakley's higher camp income fails insofar as Wiler admits that she gave "most of" her camp income away, and does not argue that she would have earned less total compensation than Coach Oakely had she not done so.

### B. Coach Marinaro is Not an Appropriate Comparator.

For the limited period of time that Coach Marinaro was actually paid *more* than Wiler (i.e., Sept. 1, 2015-June 8, 2016[3]), these coaches' jobs were not substantially equal. This is because all twelve schools in the Mid-American Conference ("MAC") have a women's soccer team, making it much more difficult for Coach Marinaro's team to succeed at the conference level. Nielsen Dec. (Doc # 52, PageID #: 1141). Moreover, Kent State's Women's Soccer program has *three times* the total operating revenues as Field Hockey. *Id.*

In response, Wiler argues that she was more *accomplished* than Coach Marinaro, and therefore deserved to be paid more. In emphasizing her particular accomplishments, however, Wiler ignores the rule that "a plaintiff establishes a prima facie EPA case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal, ***not by comparing the skills and qualifications of the individual employees holding those jobs***." *Beck-Wilson v. Principi*, 441 F.3d 353, 362-63 (6th Cir.2006) (emphasis added); *see also Marlow v. Am.'s Collectible Network, Inc.*, E.D. Tenn. No. 3:08–CV–249, 2010 WL 3064262, *5 (Aug. 3, 2010) ("since plaintiff's job was not substantially equal to Mr. West's job, plaintiff's professional achievements do not entitle her to equal pay."). Simply put, Wiler's

---

[3] Because this period is beyond the EPA's two-year statute of limitations, Coach Marinaro should not even be considered a "comparator" for purposes of Wiler's EPA claim. While Wiler's Brief in Opposition argues that the limitations period on her EPA claim extends to September 5, 2014, Wiler's lawsuit was not filed until March 3, 2020. Accordingly, the limitations period extends back to March 3, 2018, or, if the alleged violation is deemed "willful" based on a (nonexistent) pattern of prior violations, back to March 3, 2017. To be clear, the limitations period for an EPA claim "is counted backwards from the date of filing of the Complaint," *Gehrt v. Univ. of Illinois at Urbana-Champaign Co-op. Extension Serv.*, 974 F.Supp. 1178, 1189 (C.D.Ill.1997), and "the filing of [a] charge of discrimination with the EEOC does not toll the statute of limitations for a claim under the EPA," *Jones v. Trane US, Inc.*, M.D. Tenn. No. 3:19-0453 2020 WL 5088211, *9 (Aug. 28, 2020).

3

accomplishments and successes vis-à-vis her male counterparts are irrelevant when determining whether she has pleaded a plausible claim of unequal pay for equal work. That is particularly true when comparing Coach Wiler to Coach Marinaro, insofar as Coach Marinaro's team is required to prevail over *eleven* other MAC women's soccer teams to achieve the same level of conference success that Coach Wiler's team achieved by beating the *four* other MAC schools (and two MAC affiliates) with field hockey programs. Nielsen Dec. (Doc #: 52, PageID #: 1141).

      C.      **Coach Andrassy is Not an Appropriate Comparator.**

Finally, Wiler does not dispute that the Wrestling team coached by Jim Andrassy competes over a longer regular season and has significantly higher operating revenues. Accordingly, and other than pointing to the most general tasks that all coaches perform, Wiler cannot show that her and Coach Andrassy's jobs are substantially equal. *See Carey v. Foley & Lardner LLP*, 577 Fed.Appx. 573, 579–80 (6th Cir.2014) ("We decline to accept the argument ... that employees with the same titles and only the most general similar responsibilities must be considered 'equal' under the EPA.") (*quoting Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir.2004)).

More fundamentally, and with respect to *all* of her proffered comparators, Wiler has not made a showing that she, as a field hockey coach, could have perform *any* of the jobs held by her male colleagues. *See Gagliardi v. Sacred Heart Univ., Inc.*, D. Conn. No. No. 3:17-cv-857, 2019 WL 3202742, *7 (July 16, 2019), *aff'd sub nom. Gagliardi v. Sacred Heart Univ.*, 855 Fed.Appx. 1 (2d Cir.2021) (plaintiff coach failed to state a prima facie case with respect to "comparator" coaches of other sports where "his resume refers to experience with one sport and one sport only."). "As a result, there is no genuine issue of material fact as to whether [Wiler] is performing equal work on jobs requiring equal skill, effort, and responsibility, at least with

4

respect to the various [other] sports teams: because there is no evidence in this record that [s]he is qualified to coach any of these other sports teams." *Id.*

**II. Wiler Has Failed to Rebut the Legitimate, Non-Discriminatory Reasons Offered by the University to Justify the Complained-Of Pay Disparities.**

**A. Wiler Does Not Dispute Kent State's Reliance on the Market Rate for Head Coach Salaries for Each Individual Sport in the MAC.**

Assuming that Wiler can state a *prima facie* case with reference to Coach Oakley, Coach Marinaro, or Coach Andrassy, Kent State's Motion for Summary Judgment argued that the University's reliance on the market rate for head coach salaries of each individual sport in the MAC is a legitimate, non-discriminatory basis for the different salaries paid to Wiler and her chosen comparators. *See* Def.'s Mtn. for Summary J. (Doc #: 53-1, PageID #: 1868-69).

Wiler's Brief in Opposition does not seriously dispute this. For example, Wiler does not argue that the WinAD data cited in AD Nielsen's Declaration is inaccurate, misleading, contrived, or incomplete. In fact, Wiler does not challenge the WinAD comparative salary data attached to AD Nielsen's Declaration *at all*. Nor does Wiler dispute that AD Nielsen actually relied on this data when setting base salaries for the head coaches of each individual sports team at Kent State.

As a matter of law, it cannot be disputed that the University may rely on market data when setting base salaries. *See Internatl. Union, United Auto., Aerospace & Agr. Implement Workers of America v. State of Mich.*, 886 F.2d 766, 769 (6th Cir.1989) ("discriminatory intent may not be inferred from defendant's failure to depart from free market parameters in determining job classifications and wages, even if the market can be shown to contain minor flaws."); *Weaver v. Ohio State Univ.*, 71 F.Supp.2d 789, 802 (S.D.Ohio 1998), *aff'd,* 194 F.3d 1315 (6th Cir.1999) ("The Sixth Circuit has held that an employer may follow the market rate."). Indeed, the Southern District of Ohio, as affirmed by the Sixth Circuit, has already applied this

5

rule in the context of collegiate athletics and held that Ohio State University's reliance on the market rate for head coach salaries in the Big Ten Conference was a factor "other than sex" for purposes of the Equal Pay Act. *Weaver*, 71 F.Supp.2d at 801-02.

Instead of attempting to distinguish or rebut these authorities, Wiler relies on the inapposite (and out-of-circuit) case of *Lewis v. Smith*, 255 F.Supp.2d 1054 (D. Ariz. 2003) for the proposition that an employer may not rely exclusively on an employee's prior salary to support its affirmative defense to an EPA claim. In *Lewis*, the employer argued that the plaintiff's comparator's higher salary at a prior place of employment was, in and of itself, a factor other than sex justifying a higher rate of pay. Rejecting this argument, the court held that "***merely relying on the prior salary of an employee, without analyzing the market value of the employe[e]'s skills, is insufficient to establish an equal pay defense***." 225 F.Supp.2d at 1063 (emphasis added); *see also Price v. Lockheed Space Operations Co.*, 856 F.2d 1503, 1506 (11th Cir.1988) ("to accept the appellees argument that prior salary alone is a per se factor other than sex would require this court to contravene Congress' intent and perpetuate the traditionally unequal salaries paid to women for equal work.").

To be clear, Kent State is not arguing – and never has argued – that prior salaries paid to male employees, on one hand, and to female employees, on the other, justify the disparities complained of by Wiler in this case.[4] To the contrary, Wiler does not dispute that Kent State relied on objective market data showing the average salaries paid to head coaches ***of each individual sport*** within the MAC, ***regardless of sex***. Based on this data, and consistent with *Lewis*, the market value of Wiler's "skills" as a *field hockey coach* is in fact less than the market

---

[4] For example, Kent State has not argued that any of Wiler's chosen comparators should be paid more simply because they earned more at a prior place of employment. While such an argument would run afoul of the rule articulated in *Lewis*, Kent State has not made that argument in this case. Wiler's suggestion otherwise is misleading and disingenuous.

6

value of her colleagues' "skills" as coaches of other sports with higher market rates. Sex, quite simply, has nothing to do with it.

To the extent Wiler is arguing that the market rates applicable to different sports are impacted by historic discrimination, her argument is bereft of evidentiary support. In *Weaver*, for example, the Southern District of Ohio rejected the plaintiff's argument "that market rate should not be a defense when the market values are depressed by discrimination" because "there is no evidence that discrimination has played any role in establishing the market rates for field and ice hockey coaches." 71 F.Supp.2d at 802. Similarly, Wiler has not pointed to any evidence in this case showing that the market rate for field hockey coaches in the MAC perpetuates discrimination against women. Indeed, the undisputed WinAD data relied on by AD Nielsen to determine the market rate for head field hockey coaches in 2015-16 included salaries paid to several male head field hockey coaches. *See, e.g.*, Nielsen Dec. at Exh. A (Doc #: 52-1, PageID #: 1147-52). Conversely, the WinAD data for Women's Softball in 2015-16 (which yielded a higher average salary, or "market rate," than Field Hockey) was based on an *exclusively* female sample of head coaches. *See* Nielsen Dec. Exh. BBB (Doc #: 52-54, PageID #: 1760-67). In light of this data, any argument that the disparity between the market rate for Field Hockey, on one hand, and Softball, on the other, is driven by historic discrimination is wholly unfounded. Rather, it is quite clear that "low[er] salary of the [Field Hockey] Coach is set by the market, not the sex of the coach." *Bartges v. Univ. of N. Carolina at Charlotte*, 908 F.Supp. 1312, 1328 (W.D.N.C.1995), *aff'd,* 94 F.3d 641 (4th Cir.1996).

In sum, Wiler's only attempt to rebut Kent State's legitimate, non-discriminatory reason for paying different salaries to the head coaches of different sports is to inaccurately re-characterize Kent State's reliance on the *market rate* for each individual sport, regardless of sex,

7

as reliance on an individual employee's past salary.[5] The latter is not and never has been Kent State's argument, and Wiler's failure to meet and rebut Kent State's actual reasons "head on" dooms her Title VII and EPA[6] claims as a matter of law. *See, e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons […] an employee must meet that reason head on and rebut it."); *Coles v. Johnny Appleseed Broadcasting Co.*, 479 F.Supp.3d 585, 607 (N.D.Ohio 2020) ("Plaintiff shoulders the burden of demonstrating that **the proffered reason** was not the true reason for the employment decision.") (emphasis added).

      **B.    Wiler Does Not Dispute that Coach Marinaro's and Coach Andrassy's Seniority is a Legitimate, Non-Discriminatory Basis for a Pay Differential.**

In addition to the different market rates applicable to each individual sport, it is undisputed that Kent State considered Coach Marinaro's and Coach Andrassy's greater seniority when adjusting these coaches' base salaries. *See* Nielsen Dec. (Doc #: 52, PageID #: 1115, 1131, 1138-39); Marinaro Dep. (Doc #: 49, PageID #: 711). Wiler does not dispute that seniority is a legitimate, non-discriminatory basis for a pay disparity under Title VII and a factor "other than sex" for purposes of the EPA. *See Zmyslo v. NCR Corp.*, S.D.Ohio No. C-3-89-501, 1992 WL 1258521, *3 (May 20, 1992) (an employer "acts in accordance with a legitimate business interest by paying employees with long tenure more than it pays its employees with short tenure.").

---

[5] In another attempt to re-characterize Kent State's legitimate, non-discriminatory reason, Wiler argues that the University relied "on subjective factors such as 'the working conditions created by the unique demands of each individual sport—such as competitive expectation, season length, supervisory requirements, and operating revenues.'" Plf.'s Br. in Opp. (Doc #: 57, PageID #: 2385). Closer inspection of the passage quoted in Wiler's Brief in Opposition reveals that the University advanced these criteria in support of its argument on Wiler's *prima facie* case, not in support of its legitimate, non-discriminatory reasons at the second stage of the *McDonnell Douglas* analysis or in support of its EPA affirmative defense. *See* Mtn. for Summary J. (Doc #: 53-1, PageID #: 1858).

[6] In her Brief in Opposition, Wiler relies on the same arguments in an attempt to rebut Kent State's legitimate, non-discriminatory reasons under Title VII and to challenge the University's affirmative defense under the EPA. *See* Plf.'s Br. in Opp. (Doc #: 57, PageID #: 2389-90) (incorporating her Title VII arguments in opposition to Kent State's affirmative defense under the EPA). For the reasons given herein, Wiler's failure to rebut Kent State's legitimate, non-discriminatory reasons under Title VII fails to raise a triable issue of fact on Kent State's affirmative defense under the EPA.

8

Instead, Wiler attempts to minimize these coaches' seniority by measuring their service with the University from the date they began working as *head coaches*, rather than the date they jointed the University's coaching staff. Coach Marinaro, for example, joined Kent State's Women's Soccer program in 1997 and was appointed head coach in 2001. Nielsen Dec. (Doc #: 52, PageID #: 1138). Coach Andrassy joined the University's athletics department in 1994 as an assistant Wresting coach and was promoted to head coach in 2003. *Id.* (Doc #: 52, PageID #: 1131). Wiler, on the other hand, did not join the University's coaching staff until 2006. Wiler Dec. (Doc #: 56, PageID #: 1926). Accordingly, Coaches Marinaro and Andrassy had been working at the University for nine and twelve years (respectively) before Wiler was hired in 2006.

Wiler's Brief in Opposition offers no support for the proposition that Coach Marinaro's and Coach Andrassy's greater seniority is not a legitimate, non-discriminatory reason for higher pay under Title VII or a "reason other than sex" under the EPA. To the contrary, courts have consistently held that seniority constitutes a legitimate reason "other than sex" justifying a challenged pay differential. *See Harker v. Utica College of Syracuse Univ.*, 885 F.Supp. 378, 390 (N.D.N.Y.1995) ("In the case at bar, the record clearly shows that the male coach had nine years seniority over plaintiff at the time that she was hired, therefore, the court finds that the defendants have established a legitimate reason for the wage differences between them."); *Stanley v. Univ. of Southern California*, 178 F.3d 1069, 1076 (9th Cir.1999) (citing *Harker* for the proposition that "nine year experience differential between women's and men's basketball coaches justifies [a] pay differential.").

9

    **C.    With Respect to Bonus and Supplemental Compensation, Wiler Does Not Dispute that Such Compensation is Determined by Objective Factors Tied to Quality or Quantity of Production.**

Finally, and with respect to performance incentive bonuses and supplemental camp income, Wiler has already admitted that these variable categories of compensation are based on objective factors tied to quantity or quality of production. *See* Wiler Dep. (Doc #: 50, PageID #: 779-80) (testifying that incentive compensation is based on objective metrics); *id.* (PageID #: 888-95) (testifying that camp income is a function of how many camps a coach decides to hold, how many students attend a camp, and the University's overhead). It cannot be argued – and Wiler does not argue – that any of these factors are based on a coach's sex. *Id.* (PageID #: 885, 888, 895).

  Accordingly, and to the extent that Wiler's pay discrimination claim hinges in any way on disparities between her and any other coach's performance incentive bonus or supplemental camp income, there is no dispute that any pay differential in this regard is the result of legitimate and non-discriminatory criteria tied to objective metrics of performance and/or production. Because Wiler has failed to show that these criteria are a pretext for intentional discrimination, there can be no genuine dispute that differentials in any coach's performance incentive bonus and/or supplemental camp income were not "because of" that coach's sex.

## CONCLUSION

Kathleen Wiler does not dispute that Kent State University relied on sex-neutral factors including the market rate for head coaches of each individual sport, seniority, and (with respect to performance bonuses and supplemental camp income) objective metrics of performance and production when awarding compensation to the University's head coaches. Because Wiler has failed to show that any of these factors are a pretext for sex-based discrimination, the University is entitled judgment on her Title VII and EPA claims as a matter of law.

Dated: January 21, 2022

Respectfully submitted,

DAVID A. YOST (0056290)
Attorney General of Ohio

/s/ *Daniel J. Rudary*
Daniel J. Rudary (0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Phone: (330) 253-5060
Fax: (330) 253-1977
E-mail: djrudary@bmdllc.com

*Special Counsel for Defendant Kent State University*

11

## LOCAL RULE 7.1(F) CERTIFICATION

I hereby certify that the foregoing above-captioned case pending in the United States District Court, Northern District of Ohio, Eastern Division, is as of this filing assigned to the Standard Track, and that the foregoing Reply Memorandum in Support of Defendant's Motion for Summary Judgment complies with the requirements of Local Rule 7.1(f), as modified by the Court's non-document Order of November 19, 2021.

> /s/ *Daniel J. Rudary*
> *Special Counsel for Defendant Kent State University*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2022 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> /s/ *Daniel J. Rudary*
> *Special Counsel for Defendant Kent State University*

4889-3332-4809, v. 1